**CASE NO. 25-cv-03113-DC**

-----------------------------------------------------------------

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF EASTERN CALIFORNIA**

-----------------------------------------------------------------

IN RE NATHAN BENJAMIN DAMIGO

NATHAN BENJAMIN DAMIGO,

**APPELLANT**

v.

ELIZABETH SINES, SETH WISPELWEY, ARMISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PIERCE, MARCUS MARTIN, NATALIE ROMERO, JOHN DOE, AND CHELSEA ALVARADO,

**APPELLEES**

-----------------------------------------------------------------

On Appeal from the United States Bankruptcy Court

For the District of Eastern California

Honorable Ronald Sargis, United States Bankruptcy Judge

Adversary Proceeding No. 19-09006

-----------------------------------------------------------------

**APPELLANT'S OPENING BRIEF**

Glen K. Allen
5423 Springlake Way
Baltimore, MD 21212
Tel: 410-802-6453
GlenAllenLaw@protonmail.com

Attorney for Appellant

Andrew Everett Allen
340 Golden Gate Avenue
Belvedere, CA 94920-2445
415-987-7471
Merlin299@aol.com

Attorney for Appellant

APPELLANT'S OPENING BRIEF

## DISCLOSURE STATEMENT

In accordance with Fed. R. Bankr. P. 8012(b), Appellant Nathan Damigo states that he was the only debtor in the case below.

ii

## TABLE OF CONTENTS

|  | Page |
|---|---|
| DISCLOSURE STATEMENT | ii |
| TABLE OF AUTHORITIES | v |
| STATEMENT OF JURISDICTION | 1 |
| STATEMENT OF ISSUES PRESENTED | 1 |
| STANDARD OF APPELLATE REVIEW | 2 |
| STATEMENT OF THE CASE | 2 |
| A. Applicable Legal Standards. | 5 |
| 1. Collateral Estoppel Doctrine: Choice of Law and Standard | 5 |
| 2. 11 U.S.C. § 523(a)(6) Standard | 5 |
| B. *Sines v. Kessler* Procedural History | 6 |
| C. Mr. Damigo's Bankruptcy Petition and Appellees' Adversary Proceeding Complaints. | 14 |
| SUMMARY OF ARGUMENT | 14 |
| ARGUMENT | 16 |
| A. Appellees' Count III Claim for Civil Conspiracy in the *Sines v. Kessler* Case – the Only Claim on which the Jury Found Mr. Damigo Liable – Will Not Support an Exception to Bankruptcy Dischargeability Under 11 U.S.C. § 523(a)(6); This Is Emphatically So Given the First Amendment Context | 16 |
| B. In Light of the *Sines v. Kessler* Jury Instruction Permitting an Award of Punitive Damages Based on a Recklessness Standard, the Punitive Damages Award against Mr. Damigo in the *Sines v. Kessler* Case Is Dischargeable | 26 |

iii

APPELLANT'S OPENING BRIEF

C. In Light of the Bankruptcy Code's Broad Definition of "Claim," Appellees' Claim for Reimbursable Expenses in the *Sines v. Kessler* Case Was Prepetition, Therefore Dischargeable, and Cannot Be Recovered by Appellees as "Costs" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   35

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   35

STATUTES AND RULES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

iv

APPELLANT'S OPENING BRIEF

# TABLE OF AUTHORITIES

Page

## CASES

Abraham v. Palmer (In re Palmer), 555 B.R. 611
(Bankr. N.D. Ohio 2016) .................................................. 6

Bank Calumet v. Whiters (In re Whiters), 337 B.R. 326
(Bankr. N.D. Ind. 2006) .................................................. 7

Barbachano v. Allen, 192 F.2d 836 (9ᵗʰ Cir. 1951) ................. 35

Bartenwerfer v. Buckley, 598 U.S. 69 (2023) ....................... 18

Burris v. Burris (In re Burris), 598 B.R. 315
(Bankr. W.D. Okla. 2019) ............................................... 6

Carmel Financing LLC v. Schoenmann, 622 F.Supp.3d 830
(N.D. Cal. 2022) .......................................................... 2

Carillo v. Su (In re Su), 290 F.3d 1140 (9ᵗʰ Cir. 2002) ........... 21

Cole Michael Invs., L.L.C. v. Burke (In re Burke), 405 B.R. 626
(Bankr. N.D. Ill. 2009) .................................................. 7

Counterman v. Colorado, 600 U.S. 66 (2023) ....................... 24

Crawford Fitting Co. v. Gibbons, Inc., 482 U.S. 437 (1987) ....... 36

Greenlaw v. United States, 554 U.S. 237 (2008) .................... 34

Grogan v. Garner, 498 U.S. 279 (1991) ............................. 6

In re Akridge, 71 B.R. 151 (Bankr. S.D. Cal. 1987) ............... 35

In re Anthony, 2020 WL 94572 (D. M.D. Fl. Jan. 8, 2020) ......... 20

In re Arden, 2015 WL 4068962 (B.A.P. 9th Cir. July 2, 2015) ...... 5

In re Bruce, 593 B.R. 765 (Bankr. S.D. Ohio 2018) ............... 20

In re Castellino Villa A.K.F. LLC, 836 F.3d 1028 (9th Cir. 2016) ... 31-33

v

APPELLANT'S OPENING BRIEF

*In re Chien,* 2008 WL 84444802 (B.A.P. 9th Cir. Feb. 7, 2008) (unpublished) .................................................................. 17, 19

*In re Csigi,* 2024 WL 5165186 (D. Haw. Dec. 17, 2024) ........................ 6

*In re Del Rosario,* 668 B.R. 618 (B.A.P. 9th Cir. 2025) ........................ 18

*In re Duncan,* 448 F.3d 725 (4th Cir. 2006) .............................. 29-30

*In re Eggers,* 51 B.R. 452 (Bankr. E.D. Tenn. 1985) ........................ 17

*In re Hazen,* 2018 WL 4718976 (Bankr. E.D. N.Y. Sep. 28, 2018) .......... 17, 20

*In re Kelly,* 182 B.R. 255 (B.A.P. 9th Cir. 1995) ............................ 6

*In re Nolan,* 220 B.R. 727 (D.D.C. 1998) .................................. 20

*In re Riso,* 978 F.2d 1151 (9th Cir. 1992) ............................ 6, 35

*In re Rumjahn,* 2006 WL 6602239 (Bankr. S.D. Cal Oct. 13, 2006) (unpublished) .......................... 29-30

*In re Valladoid,* 2022 WL 3447512 (D.S.D. Cal. Aug. 17, 2022) ............ 5-6

*Kalitta Air LLC v. Central Texas Airborne System, Inc.,* 741 F.3d 955 (9th Cir. 2013) .................................... 36

*Kalmanson v. Adams (In re Nofziger),* 361 B.R. 236 (Bankr. M.D. Fla. 2006) .................................. 17, 19-20

*Kawaauhau v. Geiger,* 523 U.S. 57 (1998) .................... 6, 26, 28-29

*Kessler v. City of Charlottesville,* 2017 WL 3474071

*Mckesson v. Doe,* 144 S.Ct 913 (2024) .............................. 24

*NAACP v. Claiborne Hardware Co.,* 458 U.S. 886 (1982) .............. 24-25

*Petralia v. Jercich (In re Jercich),* 238 F.3d 1202 (9th Cir. 2001) ........ 21

*Sciarrino v. Medoza,* 201 B.R. 541 (E.D. Cal. 1996) .................... 2

*Sines v. Kessler,* Case No. 3:17-cv-00072-NKM (W.D. Va.) .......... Passim

vi

APPELLANT'S OPENING BRIEF

*TransDulles Center, Inc. v. Sharma*, 252 Va. 20, 472 S.E.2d 274 (1996) . . . . . . . . . . . . . . . . 5

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## STATUTES AND RULES

11 U.S.C. § 523(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

28 U.S.C. §§ 157(b)(2)(1) and (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1334 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1920 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 33-36

Fed. R. Bankr. P. 8012(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## OTHER AUTHORITY

*The Heaphy Report: Independent Review of the 2017 Protest Events in Charlottesville, Virginia (available on line)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

APPELLANT'S OPENING BRIEF

## STATEMENT OF JURISDICTION

On January 2, 2019, Appellant Damigo commenced a bankruptcy case under 11 U.S.C. Chapter 7 in the Eastern District of California Bankruptcy Court. *See* Damigo Ch. 7 Case No. 19-90003-E-7, Apx. 1 (DE[1] 1). On January 30, 2019, Appellees filed an adversary proceeding in Mr. Damigo's case pursuant to Fed. R. Bankr. P. 7001(6) as a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (3), invoking the Bankruptcy Court's jurisdiction under 28 U.S.C. §§ 157(b) and 1334 (b). *See* Adv. Proc. No. 19-09006-E, Apx. 3 (DE 19), 44, 47, 65. On April 3, 2025, Appellees filed a two-count Amended Complaint in the Adversary Proceeding. Apx. 55 (DE 82), 71.

On May 8, 2025, Appellant Damigo and Appellees filed cross motions for summary judgment in the Adversary Proceeding. Apx. 56 (DE 89, 93). On August 29, 2025, the Bankruptcy Court entered final judgment on the cross motions, granting summary judgment for Appellees as to Count I of the Amended Complaint and for Appellant Damigo as to Count II. Apx. 61 (DE 145, 146, 150); Apx. 302, 337. On September 10, 2025, Appellant Damigo filed a notice of appeal in the Bankruptcy Court. Apx. 62 (DE 158), 339. The appeal was initially sent to the Bankruptcy Appellate Panel for the Ninth Circuit, where it was docketed as EC-25-1159. On October 10, 2025, Appellees filed a Statement of Election in the Bankruptcy Court, electing to have the appeal heard in this District Court. Apx. 63 (DE 169). The appeal was docketed in this Court on October 21, 2025. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158.

## STATEMENT OF ISSUES PRESENTED

1) Whether the Bankruptcy Court erred in holding, based on collateral estoppel principles and the jury verdict, jury instructions, and Amended Judgment in the *Sines, et al. v. Kessler, et al.,* Case No. 3:17-cv-00072-NKM (Western District of Virginia) ("*Sines v. Kessler*") case, that the compensatory and nominal damages awarded against Appellant Mr. Damigo in that case are

---

[1] "DE" signifies docket entries.

APPELLANT'S OPENING BRIEF

nondischargeable under 11 U.S.C. § 523(a)(6).

2) Whether the Bankruptcy Court erred in holding, based on collateral estoppel principles and the jury verdict, jury instructions, and Amended Judgment in the *Sines v. Kessler* case, that the punitive damages awarded against Appellant Mr. Damigo in that case are nondischargeable under 11 U.S.C. § 523(a)(6).

3) Whether the Bankruptcy Court erred in holding, based on collateral estoppel principles and the jury verdict, jury instructions, and Amended Judgment in the *Sines v. Kessler* case, that the Reimbursable Expenses awarded against Mr. Damigo in that case are nondischargeable as "costs" under 11 U.S.C. § 523(a)(6).

## STANDARD OF APPELLATE REVIEW

The standard of review for a district court reviewing a bankruptcy court's decision on a motion for summary judgment is *de novo*. *See, e.g.*, *Sciarrino v. Medoza*, 201 B.R. 541, 542 (E.D. Cal. 1996); *Carmel Financing LLC v. Schoenmann*, 622 F.Supp.3d 830, 837 (N.D. Cal. 2022).

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## STATEMENT OF THE CASE

As noted, on January 2, 2019, Appellant Damigo filed his Chapter 7 bankruptcy petition in Case No. 19-90003-E-7. Apx. 1, 5. In this petition, Mr. Damigo listed the *Sines v. Kessler* plaintiffs (Appellees here) as they had been identified as of the date of the filing. Apx. 11-17. On January 30, 2019, Appellees filed their initial Adversary Proceeding complaint in Case No. 19-09006-E, seeking a determination that damages arising from the claims they asserted in their lawsuit against Mr. Damigo in the *Sines v. Kessler* litigation were non-dischargeable as alleged "willful and

2

malicious injuries" under 11 U.S.C. § 523(a)(6) of the Bankruptcy Code. Apx. 65. Following this initial complaint, the parties awaited the final judgment in *Sines v. Kessler*, which did not occur until the Virginia District Court issued its Amended Judgment on October 8, 2024.[2] A few postponements were granted in the Adversary Proceeding to give Mr. Damigo time to locate counsel.

On April 3, 2025, after the Virginia *Sines v. Kessler* court issued its Amended Judgment, Appellees filed their Amended Complaint in the Adversary Proceeding. Apx. 71-286. The Amended Complaint updated the status of the *Sines v. Kessler Litigation*; changed the list of plaintiffs, and added a separate count (Count II) with regard to the Reimbursable Expenses component of the Amended Judgment. The new count was not based on § 523(a)(6). Apx. 71-80.

On May 8, 2025, Appellees and Appellant Damigo filed cross motions for summary judgment based on Appellees' Amended Complaint. Apx. 56-57 (DE 89-105). In their opening memorandum in support of their summary judgment motion, Appellees summarized the grounds of their motion as follows:

> Plaintiffs are entitled to summary judgment that the Charlottesville Judgment is nondischargeable in its entirety. First, the jury in the Charlottesville Action actually and necessarily decided that Damigo's conduct giving rise to Plaintiffs' injuries was willful and malicious, the Charlottesville Judgment is valid and final, and well-settled law of issue preclusion prevents the Defendant from trying to further litigate these issues before the Court. The Nominal and Compensatory Damages reflected in the Charlottesville Judgment are subsequently [sic] nondischargeable under Section 523(a)(6). Second, the Punitive Damages and Costs are also nondischargeable under Section 523(a)(6) because they are "ancillary" to, and arise from, the underlying willful and malicious injury. Finally, the Reimbursable Expenses incurred by Damigo are a post-petition obligation not subject to discharge because they arose after the Petition Date.

Apx. 301.

---

[2] Mr. Damigo was granted a bankruptcy discharge, except as to the matters in the Adversary Proceeding, on April 16, 2019. Apx. 42.

3

APPELLANT'S OPENING BRIEF

Appellant Damigo in his cross motion argued that based (1) on the plain text of the § 523(a)(6) exception to dischargeability (especially the "injury by the debtor" language), (2) the fact that the *Sines v. Kessler* jury found Mr. Damigo liable only on the Count III Civil Conspiracy claim and awarded only nominal damages against him, (3) case law supporting that secondary or vicarious liability is insufficient to support a § 523(a)(6) exception, (4) the strict standards required by collateral estoppel doctrine, and (5) other factors, Appellees could not support their attempted invocation of the § 523(a)(6) exception, leaving them with no basis to prevent his bankruptcy discharge as to the *Sines v. Kessler* judgment. *See generally* Apx. 56-58 (DE 89, 91, 107, 112).

Specifically as to the punitive damages component of the *Sines v. Kessler* judgment, Mr. Damigo argued that (1) in the light of *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), in which the Supreme Court held that the § 523(a)(6) exception cannot be based on a recklessness standard, and (2) the jury instruction on punitive damages in the *Sines v. Kessler* case permitting recovery on a recklessness standard, Appellees' invocation of the exception as to the punitive damages component failed. *Id.* As to the Reimbursable Expenses component, Mr. Damigo argued that based on the broad definition of "claim" under the Bankruptcy Code, which includes unliquidated and contingent claims, and the fact that Appellees' Reimbursable Expenses claim could fairly be characterized as unliquidated or contingent as of the date of Mr. Damigo's bankruptcy filing, the Reimbursable Expenses claim is properly deemed pre petition and therefore dischargeable. *Id*

On August 29, 2025, the Bankruptcy Court issued its opinion and final judgment on the cross motions. Apx 302-337. The court granted Appellees' motion as to Count I of their Amended Complaint and Mr. Damigo's motion as to Count II. Mr. Damigo will address the errors in the Bankruptcy Court's decision in this brief's Argument section. First, however, it is logical to provide background to the collateral estoppel issues, as they are of critical importance.

4

## (A)
## APPLICABLE LEGAL STANDARDS

### 1. Collateral Estoppel Doctrine Choice of Law and Standard

The Bankruptcy Court concluded that Virginia law applied as to the application of the collateral estoppel doctrine. Apx. 318. Mr. Damigo submits that the proper choice of law analysis is as follows: (1) whether state collateral estoppel law or federal common law governs in a case such as *Sines v. Kessler* that involves federal supplemental jurisdiction over a state law claim is unsettled. *See In re Valladoid*, 2022 WL 3447512 (D.S.D. Ca. Aug. 17, 2022) at * 4 n. 6. (2) Collateral estoppel doctrine under federal common law and California law are substantively the same. *Id.* at * 4. (3) The collateral estoppel doctrine of California and Virginia are substantively the same. Compare *TransDulles Center, Inc. v. Sharma*, 252 Va. 20, 22–23, 472 S.E.2d 274, 275 (1996) with *In re Arden*, 2015 WL 4068962 (B.A.P. 9th Cir. July 2, 2015) at * 8.

The upshot of this analysis is that the following are the elements of collateral estoppel doctrine applicable to this case:

> Issue preclusion bars relitigation of an issue where (1) the issue is identical to an issue in an earlier action, (2) the issue was actually litigated in the earlier action, (3) the issue was necessary to that judgment, (4) there was a final judgment on the merits in the earlier action, and (5) the parties to both actions are the same or there is privity. *In re Silva*, 190 B.R. 889 892 (9th Cir. BAP 1995); *accord Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992) (issue must be identical, actually litigated, and necessarily decided).

*In re Valladoid*, 2022 WL 3447512 at * 4. Reasonable doubts about what was decided in the prior action should be resolved against the party seeking preclusion. *In re Kelly*, 182 B.R. 255, 258 (B.A.P. 9th Cir. 1995); *In re Valladoid*, 2022 WL 3447512 at * 4.

### 2. 11 U.S.C. § 523(a)(6) Standard

Appellees seek, based on collateral estoppel, a nondischargeability determination under 11 U.S.C. § 523(a)(6). A presumption exists that all debts owed by the debtor are dischargeable unless

5

APPELLANT'S OPENING BRIEF

the party contending otherwise proves nondischargeability. 11 U.S.C. § 727(b). Courts should narrowly construe exceptions to discharge against the creditor and in favor of the debtor. *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992); *In re Csigi*, 2024 WL 5165186 (D. Haw. Dec. 17, 2024) at * 2. The burden is on the creditor to prove the exception to discharge by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287–88 (1991).

A § 523(a)(6) claim requires that the debtor's conduct causing the injury was "willful and malicious." This standard requires not only that the debtor's act was intentional, but that the debtor engaged in the conduct with an "intent to injure"; "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). Injury caused by reckless or negligent conduct, accordingly, does not fall under the scope of § 523(a)(6). *Id.* at 64. In the years following *Geiger*, numerous bankruptcy courts have noted the heightened burden of proof plaintiff creditors must meet to successfully prove nondischargeability under § 523(a)(6). *See, e.g., Burris v. Burris (In re Burris)*, 598 B.R. 315, 334 (Bankr. W.D. Okla. 2019) (describing the standard as "stringent"); *Abraham v. Palmer (In re Palmer)*, 555 B.R. 611, 627-28 (Bankr. N.D. Ohio 2016) (describing the standard as "stringent" and "difficult"); *Bank Calumet v. Whiters (In re Whiters)*, 337 B.R. 326, 339 (Bankr. N.D. Ind. 2006) (finding "the *Geiger* standard is extremely strict for creditors to meet.").

### (B)
### *SINES V. KESSLER* PROCEDURAL HISTORY

The initial complaint in *Sines v. Kessler*, filed on January 5, 2018 by 10 plaintiffs against 25 defendants including Mr. Damigo, was lengthy and complex. The complaint (subsequently twice amended) led to over 1600 docket entries in over three years of litigation. It purported to describe the tumultuous events at the Unite the Right Rally in Charlottesville, Virginia, in August 2017. In

6

APPELLANT'S OPENING BRIEF

its final form as the Second Amended Complaint ("*Sines v. Kessler* SAC"), filed on September 17, 2019, it alleged seven causes of action. See Apx. 81-190 (attached as Exhibit A to Appellees' Amended Complaint in Adversary Proceeding); *see also* Apx. 56 (DE 98, Joint Exhibit 5).

Mr. Damigo would make three general observations about the allegations in the *Sines v. Kessler* SAC, which Appellees – improperly, Mr. Damigo submits – later incorporated into their Amended Complaint in the Adversary Proceeding:

First, the allegations are mere allegations, not evidence or proof. In accordance with basic collateral estoppel doctrine what matters are not the allegations but the facts that were actually litigated and necessarily resolved by the jury.

Second, the allegations in the *Sines v. Kessler* SAC specifically regarding Mr. Damigo are few and sparse. Most saliently, Appellees allege that Defendant Richard Spencer stated that Mr. Damigo "took the lead" in organizing the Unite the Right rally. Apx. 107 (*Sines v. Kessler* SAC at ¶ 69). But the "organization" of a political rally, however unpopular the views expressed at the rally, is not inherently nefarious or malicious. This point is underscored by the fact that when the City of Charlottesville attempted to revoke the permit for the Unite the Right rally, Judge Conrad on First Amendment grounds granted an injunction preventing the City from doing so. *See Kessler v. City of Charlottesville*, 2017 WL 3474071 (W.D. Va. Aug. 11, 2017).

Third, the allegations make repeated use of inflammatory labels, guilt by association, and broad statements that lump all defendants together and fail to fairly differentiate their separate alleged actions – a particularly pernicious pleading tactic as to Mr. Damigo, who as noted is specifically mentioned only a few times in the allegations. A more balanced and objective account of the tumultuous events at the UTR rally was presented in the *Independent Review of the 2017 Protest Events in Charlottesville, Virginia* (the "Heaphy Report"), an extensive 207-page report

7

APPELLANT'S OPENING BRIEF

commissioned by the city of Charlottesville and prepared by a team of lawyers led by Timothy Heaphy, former United States Attorney for Virginia (available on line).

The seven causes of action alleged in the *Sines v. Kessler* SAC were the following:

1.  42 U.S.C. § 1985(3) – all 10 plaintiffs against all 24 defendants, including Mr. Damigo.[3]

2.  42 U.S.C. § 1986 – all 10 plaintiffs against all 24 defendants, including Mr. Damigo.

3.  Civil Conspiracy -- all 10 plaintiffs against all 24 defendants, including Mr. Damigo.

4.  Negligence Per Se – seven defendants against one defendant, i.e., James Fields. On October 22, 2021, the plaintiffs voluntarily dismissed this count.

5.  Virginia Code 8:0142.1 – eight plaintiffs against seven defendants, not including Mr. Damigo.

6.  Assault and Battery – seven plaintiffs against one defendant, i.e., James Fields.

7.  Intentional Infliction of Emotional Distress – seven plaintiffs against one defendant, i.e., James Fields.

Apx. 183-193.

On October 25, 2021, following the filing of the *Sines v. Kessler* SAC, extensive discovery, and numerous motions, nine plaintiffs proceeded to a jury trial on six claims (claims 5, 6, and 7 in the *Sines v. Kessler* SAC were renumbered to 4, 5, and 6) against 23 defendants, including Mr. Damigo. For present purposes, the following instructions given the jury are relevant:

### Final Jury Instruction # 14 Membership in a Conspiracy

Because there are multiple defendants in this case, you will also need to consider which, if any, of the Defendants was a member of the alleged conspiracy. One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all of the other alleged conspirators. If a person understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to prove him as being a member of the conspiracy even though the person had not participated before and even though he played only a minor part.

---

[3] As to the SAC's first three causes of action, two plaintiffs, Baker and Pearce, sued only certain subsets, which included Mr. Damigo, of the 24 defendants.

8

APPELLANT'S OPENING BRIEF

The extent of a Defendant's participation, if any, has no bearing on the issue of a Defendant's membership, if any. A conspirator's membership is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires.

In fact, even a single act may be sufficient to draw a defendant within the ambit of the conspiracy. Moreover, once a conspiracy is established, even a slight connection between the defendant and the conspiracy could be sufficient to include him in the plan. To be clear, that does not mean that Plaintiffs' burden of proof is "slight." Before the jury may find that a defendant, or any other person, became a member of the conspiracy, the evidence in the case must show by a preponderance of the evidence that the defendant knew the purpose or goal of the agreement or understanding of that conspiracy and then deliberately entered into the agreement, intending in some way to accomplish the goal or purpose by this common plan or joint action.

In attempting to prove a Defendant's membership in the alleged conspiracy, Plaintiffs may rely on all direct and circumstantial evidence, including the nature of the alleged conspiracy, the Defendant's association to other members of the alleged conspiracy, if any, the Defendant's conduct before, during, and after the relevant events, and the Defendant's presence at the scene of events, if applicable.

Apx. 344-45.

### Final Jury Instruction # 23 Civil Conspiracy (Excerpted)

. . . Plaintiffs also bring a claim that Defendants violated Virginia state law by conspiring to commit a variety of unlawful and tortious actions against them . . . .

Under Virginia law, persons who conspired together to commit one or more unlawful acts may be held liable for the injuries that result from that conspiracy. Plaintiffs allege that the Defendants conspired with one or more persons to commit one or more of the following unlawful acts: • Subjecting persons to actions of intimidation or harassment, motivated by racial, religious, or ethnic animosity in violation of Virginia Code § 8.01-42.1 (often referred to as Virginia's hate crimes statute); • Directing violence at another person, motivated by racial, religious, or ethnic animosity in violation of Virginia Code § 8.01-42.1; • Directing vandalism at a person's real or personal property, motivated by racial, religious, or ethnic animosity in violation of Virginia Code 8.01-42.1; • Committing an unwanted touching that was neither consented to, excused, or justified (battery); • Engaging in an overt act intended to inflict bodily harm, or intended to place the victim in fear or apprehension of bodily harm (assault); and • Causing a reasonable apprehension that force will be used unless a person willingly submits and causing him to submit to the extent that he is denied freedom of action (false imprisonment).

9

Each of these alleged unlawful or tortious acts has its own specific elements that Plaintiffs must prove . . . .

Importantly, Plaintiffs need only prove that Defendants conspired to commit one of these underlying acts to impose liability. And, unlike Plaintiffs' § 1985(3) claim, Plaintiffs' Virginia law conspiracy claim only requires Plaintiffs to prove that Defendants harbored discriminatory animus if that is an element of the underlying unlawful or tortious act. For example, discriminatory animus is not required to prove assault or battery and is thus not required to prove a conspiracy to commit assault and battery.

Soon, I will instruct you on the elements that Plaintiffs must prove for the other unlawful or tortious acts alleged by Plaintiffs, which include assault and battery, and violations of the Virginia hate crimes statute . . . .

It would be sufficient if Plaintiffs prove by a preponderance of the evidence that the alleged conspiracy existed to commit one of those offenses. I previously instructed you as to the law governing the existence of a conspiracy and membership therein including in Instructions 13-15, and those principles are applicable here.

Apx. 346-48.

### Final Jury Instruction # 36 Punitive Damages (Excerpted)

. . . .You may award Plaintiffs punitive damages if you find that the acts or omissions of a Defendant were done maliciously or wantonly. An act or failure to act is maliciously done if it is prompted by ill will or spite towards the injured person. An act or failure to act is wanton if done with a reckless or callous disregard for the rights of the injured person. Plaintiffs have the burden of proving, by a preponderance of the evidence, that a Defendant acted maliciously or wantonly with regard to the Plaintiffs' rights.

If you find by a preponderance of the evidence that a Defendant acted with malicious intent to violate the Plaintiffs' federal rights or unlawfully injure him, or if you find that a Defendant acted with a callous or reckless disregard of the Plaintiffs' rights, then you may award punitive damages.

Apx. 349.

On November 23, 2021, the jury rendered its verdict via a jury verdict form. *See* Apx. 351 (*Sines v. Kessler* Verdict Form). The jury deadlocked on the Plaintiffs' / Appellees' first and second claims, i.e., under 42 USC § 1985(3) and 42 U.S.C. § 1986. Apx. 352-53. Mr. Damigo was a defendant in both claims. As to the third claim, Civil Conspiracy, in which Mr. Damigo was also a defendant, the jury found for the Appellees and against Mr. Damigo and 16 other defendants. Apx.

10

APPELLANT'S OPENING BRIEF

354. On this claim, the jury awarded compensatory damages of $1.00 to seven plaintiffs, $0.00 to two other plaintiffs, punitive damages against Mr. Damigo and 11 other defendants in the separate amounts of $500,000, and punitive damages against five other defendants in the amounts of $1,000,000. Apx. 355-56.

As to the fourth, fifth, and sixth claims, in all of which Mr. Damigo was not a defendant, the jury found for the Plaintiffs / Appellees. Apx. 357. As to the fourth claim, for violation of Virginia Code 8.01-42.1, the jury awarded compensatory damages of $250,000 each in favor of two Appellees against five defendants (not including Mr. Damigo) for a total of $500,000; and $200,000 in punitive damages in favor of the two Appellees against each of the five defendants (not including Mr. Damigo), for a total of $1,000,000. *Id.* It also found in favor of certain plaintiffs against James Fields, but awarded no compensatory or punitive damages. Apx. 358. As to the fifth claim, for assault and battery by six Appellees against only Defendant James Fields, the jury found compensatory damages in various amounts totaling $803,277 in favor of five of the Appellees and total punitive damages of $6,000,000. Apx. 359. As to the sixth claim, for intentional infliction of emotional distress by the same six Appellees once again against only Defendant James Fields, the jury found compensatory damages in various amounts totaling $701,459 in favor of all six Appellees and total punitive damages of $6,000,000. Apx. 360.

Following the verdict, numerous defendants filed post trial motions under FRCP 50(b) and 59. On December 30, 2022, the Virginia District Court filed a memorandum opinion addressing all post trial motions filed by all defendants. Apx. 194.

Applying the verdict-favoring standards applicable to FRCP 50(b) and 59, the court held that there was sufficient evidence before the jury to uphold the jury's verdict, including the Count III Civil Conspiracy claim against Mr. Damigo. Apx. 196-197, 200. The court further held (Apx. 270) that liability under the Count III Civil Conspiracy claim was joint and several liability as to all defendants found liable under that claim and extended to the damages verdicts rendered in Count IV (Virginia statute) and Count V (assault and battery), which the court characterized as "predicates"

11

APPELLANT'S OPENING BRIEF

for the Count III conspiracy claim (Apx. at 270-71 n.31), even though Mr. Damigo was not named as a defendant in either count.

The court also addressed the issue of the impact of the Virginia statute, Va. Code 8.01-38.1, which caps punitive damages at $350,000 – namely whether the statutory cap applied per plaintiff or to the action as a whole. The court held (Apx. 256-263) the cap was per action; accordingly, it capped plaintiffs' entire punitive damages award at $350,000. The court further held the punitive damages award was *pro rata* and not subject to joint liability. Apx. 271.

The court entered judgment on January 9, 2023. Thereafter, many of the defendants, including Mr. Damigo, filed notices of appeal to the Fourth Circuit Court of Appeals and the Appellees filed a cross notice of appeal. Apx. 361.

On March 7, 2023, the Magistrate Judge assigned to the *Sines v. Kessler* case issued a Report and Recommendation and an Order relevant to the bankruptcy Adversary Proceeding. Apx. 388, 434. The Report and Recommendation (DE 1655) concerned Plaintiffs' / Appellees' motion for attorney's fees and costs. The Order (DE 1656) concerned Plaintiffs' / Appellees' request for "Reimbursable Expenses." In the course of his analysis as to the Plaintiffs' / Appellees' motion for attorney's fees and costs in his Report and Recommendation, the Magistrate Judge stated:

> "[N]o Plaintiff plausibly alleged — let alone proved — that Damigo, Heimbach, Parrott, Hill, Tubbs, Schoep, Vanguard America, Identity Evropa, TWP, LOS, or NSM subjected him or her to racially, religiously, or ethnically motivated harassment, intimidation, or violence in violation of § 8.01-42.1(A)."

Apx. 394.

With regard to the separate issue of costs, the Magistrate Judge held that the Appellees had "carried their initial burden to show they are entitled to recover $468,216.15 in costs under Rule 54(d)(1) and 28 U.S.C. § 1920." Apx. at 429.

In his DE 1656 Order on "Reimbursable Expenses," the Magistrate Judge explained:

> Separately, Plaintiffs seek $1,266,420.84 in costs associated with hiring a third-party discovery vendor to collect and produce electronically stored information ("ESI") from

12

APPELLANT'S OPENING BRIEF

Electronic Devices and Social Media Accounts belonging to certain Defendants or their agents. See Pls.' Mot. 20, 32 (citing ECF No. 383); Decl. of Yotam Barkai, Esq. ¶¶ 27–28 (citing ECF Nos. 379, 383). They make this request specifically under the parties' Stipulation & Order for the Imaging, Preservation, and Production of Documents, ECF No. 383 ("ESI Stip. & Order"), and not under Rule 54(d)(1) of the Federal Rules of Civil Procedure. See Pls.' Mot. 20, 32 (citing ECF No. 383); Barkai Decl. ¶ 28 (citing ECF Nos. 379, 383). . . . I signed and entered the ESI Stipulation & Order on November 19, 2018 . . .

Apx. 434-435.

The Magistrate Judge held in this DE 1656 Order that "Plaintiffs are entitled to recover $1,266,420.84 in reimbursable expenses under the terms of the ESI Stipulation & Order" and held Mr. Damigo and the other defendants jointly and severally liable for this amount. Apx. 436. On March 30, 2023, the District Court (DE 1660) approved the Magistrate Judge's Report and Recommendation in DE 1655. Apx. 438.

On July 1, 2024, the Fourth Circuit rendered its decision on the parties' appeals and cross appeal. Apx. 361. The appellate court addressed two basic issues. The first concerned the District Court's holding on joint and several liability; the Fourth Circuit affirmed this holding. Apx. 378-79. The second concerned the District Court's holding rejecting Plaintiffs' per-plaintiff argument as to the punitive damages statutory cap. The Fourth Circuit reversed this holding, held that the statutory cap applied per plaintiff, and remanded the case to the District Court. Apx. 379, 386-387.

On October 8, 2024, the District Court, following remand, issued its Amended Judgment. Apx. 441. The court noted that in its initial judgment, which the Fourth Circuit affirmed, it had held "all Defendants jointly and severally liable for the nominal and compensatory damages awards on Counts III, IV, and V, which amount is $1,303,284." Apx. 442. The court further ordered that each Defendant found liable by the jury at trial for punitive damages was also liable for their *pro rata* portion of the amended punitive damages award of $2,800,000, "as follows . . . : $58,333.33 for . .

13

APPELLANT'S OPENING BRIEF

. Damigo." Apx. 442-443. The court further held that it had "also determined, in separate Orders following its January 9, 2023 Judgment . . . that all Defendants were jointly and severally liable for a total of $468,216.15 in costs to all Plaintiffs; and that Defendants . . . [including] Damigo . . . were jointly and severally liable for a total of $1,266,420.84 in reimbursable expenses to all Plaintiffs under the terms of the ESI Stipulation & Order. See ECF 1660 at 3; Dkt. 1656 at 3; Fed. R. Civ. P. 58(a)(3)." Apx. 443. In summary, the Virginia District Court held Mr. Damigo jointly and severally liable for $1,303,284 in nominal and compensatory damages, $468,216.15 in costs, and $1,266,420.84 in reimbursable expenses; plus liable *pro rata* for $58,333.33 in punitive damages.

## (C)
## MR. DAMIGO'S BANKRUPTCY PETITION AND APPELLEES' ADVERSARY PROCEEDING COMPLAINT

As noted, Mr. Damigo filed his Chapter 7 bankruptcy petition in Case No. 19-90003 on January 2, 2019. Mr. Damigo would draw the Court's attention to the following aspects of his petition: He filed his petition *pro se*. He was not represented by counsel in his bankruptcy petition or the adversary proceeding until 2025. Apx. 54 (DE 75). His petition details his lack of resources. His net worth as shown on his amended summary of assets and liabilities was $29,292. Apx. 24. His petition corroborates his military service and injury therein. Mr. Damigo is a former Marine who draws disability for PTSD and physical disabilities that he suffered while serving in Iraq. Apx. 32.

## SUMMARY OF ARGUMENT

The Bankruptcy Court in its opinion holding the *Sines v. Kessler* judgment nondischargeable acknowledged that the express text of the § 523(a)(6) exception limited the exception to "willful and malicious injury by the debtor to another entity of to the property of another entity" and therefore could not be based on the debtor's vicarious liability. Apx. 321. The court nonetheless held: "The Court finds Defendant-Debtor's liability . . . to be nondischargeable . . . not under any vicarious

14

APPELLANT'S OPENING BRIEF

liability standard but based on Defendant-debtor's direct actions in engaging in civil conspiracy where the object of that conspiracy involved willfully and maliciously harming others." Apx. 326. This contention cannot be reconciled with the explicit text of the § 523(a)(6) exception, with the amended complaint, jury instructions, and jury verdict in *Sines v. Kessler*, with case relevant case law, or with basic collateral estoppel principles.

The Bankruptcy Court acknowledged that (1) it was not possible from the *Sines v. Kessler* jury instructions and jury verdict to determine which of five possible causes of action served as the predicate for Mr. Damigo's liability under the Count III Civil Conspiracy claim, and (2) as to some of these possibilities, Virginia law did not support a conclusion that his conduct rose to the level of willful and malicious injury. Apx. 320. The Bankruptcy Court, however, concluded that the *Sines v. Kessler* trial court's December 30, 2022 memorandum opinion in response to the motions for directed nonetheless supported a holding that Mr. Damigo had been held liable for willful and malicious conduct. Apx. 320-21. This reasoning is flawed. The burden of proof applied in the court's directed verdict memorandum differed radically from the burden applicable in the bankruptcy Adversary Proceeding and the court's memorandum addressed issues very different from the § 523(a)(6) issues, thus failing the collateral estoppel requirements that identical issues be actually and necessarily litigated in the underlying case. The court's memorandum, in short, did not address whether Mr. Damigo had caused "willful and malicious injury to" the Plaintiffs / Appellees.

As to the punitive damages component of the *Sines v. Kessler* Amended Judgment, the Bankruptcy Court stated that "[t]he important question is . . . not whether the punitive damages were awarded on a reckless standard, but whether 'wanton' is synonymous with 'willful and malicious.' The court turns to established Virginia law for definitions of wanton." Apx. 328. In accordance with basic elements of collateral estoppel, however, which require that the judgment on which the

15

APPELLANT'S OPENING BRIEF

collateral estoppel would be based actually and necessarily decided the identical issue as to which collateral estoppel is invoked, the analytical focus should not be diverted into abstract questions of Virginia law but should remain tightly focused on the jury instructions in the underlying case, which are the only path to determining what the jury actually and necessarily decided. The punitive damages jury instruction in *Sines v. Kessler* manifestly permitted the jury to award punitive damages on a recklessness standard in contravention of the Supreme Court's *Geiger* case.

With respect to the Reimbursable Expenses component of the *Sines v. Kessler* Amended Judgment, the Bankruptcy Court took the extraordinary step of crafting a legal theory that the Appellees themselves did not advance and that was irreconcilable with the legal theory they did advance. Appellees in their separate Count II in their Adversary Proceeding Amended Complaint contended that Mr. Damigo's liability for Reimbursable Expenses claim arose post-petition and therefore was not subject to discharge by his bankruptcy petition. Apx. 71, 79. The Bankruptcy Court, however, rejected this argument and in fact granted summary judgment to Mr. Damigo as to Count II. The court nonetheless held for the Appellees on the novel legal theory that the Reimbursable Expenses came within the scope of the § 523(a)(6) exception as "costs." Apx. 329, 333. No authority, however, supports characterization of the Reimbursable Expenses as "costs."

ARGUMENT

I.    **Plaintiffs' Count III Claim for Civil Conspiracy in the *Sines v. Kessler* Case — the Only Claim on which the Jury Found Mr. Damigo Liable — Will Not Support an Exception to Dischargeability Under Section 523(a)(6); This Is Emphatically So Given the First Amendment Context.**

Appellees contend that the § 523(a)(6) exception to dischargeability applies in this case with regard to their Civil Conspiracy claim in *Sines v. Kessler*, the only claim on which the jury found Mr. Damigo liable. Section 523(a)(6) states: "A discharge under section 727, 1141, 1192, 1228(a),

16

APPELLANT'S OPENING BRIEF

1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity...." In Mr. Damigo's summary judgment memoranda, he argued that two overlapping angles of approach demonstrate why Appellees' invocation of the § 523(a)(6) exception was not well grounded. The first involves case law, including *In re Chien*, 2008 WL 84444802 (B.A.P. 9th Cir. Feb. 7, 2008) (unpublished), *Kalmanson v. Adams (In re Nofziger)*, 361 B.R. 236 (Bankr. M.D. Fla. 2006), *In re Eggers*, 51 B.R. 452 (Bankr. E.D. Tenn. 1985), *In re Hazen*, 2018 WL 4718976 (Bankr. E.D. N.Y. Sep. 28, 2018), and many other cases, all supporting the proposition that the explicit text and legislative history of § 523(a)(6) show that a debt is nondischargeable only where the creditor's injury resulted from some deliberate or intentional act *by the debtor* and not from the debtor's vicarious liability. The second angle involves application of basic collateral estoppel principles.

The Bankruptcy Court rejected these arguments. The court summarized its rationale as follows: "The court finds Defendant-Debtor's liability in the Amended Charlottesville Judgment to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6), not under any vicarious liability standard but based on Defendant-Debtor's direct actions in engaging in civil conspiracy where the object of that conspiracy involved willfully and maliciously harming others." Apx. 326.

Multiple flaws undermine this rationale. To see them, a necessary starting point is the express language of the § 523(a)(6) exception, especially the words here emphasized: willful and malicious *injury by the debtor to another entity or to the property of another entity.* Many courts, including courts within the Ninth Circuit, have underscored the importance of a close focus on this "injury by the debtor" language. The Ninth Circuit Bankruptcy Panel's recent decision in *In re Del Rosario*, 668 B.R. 618 (B.A.P. 9th Cir 2025), is particularly relevant. In that case, Mr. and Mrs. Del Rosario were held vicariously liable in California state court for injuries their minor son inflicted on another

17

child. The Del Rosarios filed for bankruptcy seeking to discharge that judgment debt. The creditors (plaintiffs in the state court action) filed a complaint in the bankruptcy court to except the judgment debt from discharge under § 523(a)(6). Countering, the Del Rosarios argued that their vicarious liability was insufficient to support the § 523(a)(6) exception. The bankruptcy court agreed with the Del Rosarios, and the BAP affirmed, stating:

> Under [the rationale of *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023)] the presence of the phrase "by the debtor" in § 523(a)(6) is critical. To hold otherwise would violate the very statutory interpretation and dichotomy on which *Bartenwerfer* focused.
>
> Applying to § 523(a)(6) the same methodology *Bartenwerfer* used to distinguish the text of § 523(a)(2)(A) from the text of (B) and (C), the presence in § 523(a)(6) of the phrase "by the debtor" must be given at least the same weight as *Bartenwerfer* gave its omission from § 523(a)(2)(A). In this sense, § 523(a)(6) is the polar opposite of § 523(a)(2)(A). In short, appellant offers no argument as to why the clear language of § 523(a)(6) should not be applied as it reads: to require the creditor to prove that the debtor both caused the willful and malicious injury and harbored the requisite intent.
>
> 668 B.R. at 627.

*In re Chien*, also a Ninth Circuit BAP case, is another relevant precedent. In that case the debtor, Luc, argued that the § 523(a)(6) exception could be based on the debtor's liability under a civil conspiracy claim. The Bankruptcy Panel rejected this argument:

> The plain language of § 523(a)(6) excepts from discharge a willful and malicious injury *by the debtor* to another entity (emphasis added)....
>
> ... Regarding Luc's conspiracy theory, the recent case of *Kalmanson v. Adams (In re Nofziger)*, 361 B.R. 236 (Bankr. M.D. Fla. 2006), while not binding, is instructive. In *Nofziger*, the court held that a conspiracy claim would not substitute for the intentional tort typically required to make a debt nondischargeable under § 523(a)(6). The court's decision was based on the rationale that a co-conspirator's acts are not the debtor's acts which must be taken directly against the objecting creditor as required by § 523(a)(6). *Id.* The court observed that "action taken by someone other than the debtor" does not qualify. *Id.* We agree with *Nofziger*, consistent with the standards set forth in *Geiger* and *Su*, that Luc's conspiracy theory is inapplicable in the context of § 523(a)(6).

18

APPELLANT'S OPENING BRIEF

*In re Chien*, 2008 WL 84444802 at * 7.

*In re Chien* favorably cited to *Kalmanson v. Adams (In re Nofziger)*, 361 B.R. 236 (Bankr. M.D. Fla. 2006). In *Nofziger*, a creditor brought an adversary proceeding against Chapter 7 debtors who had allegedly participated in a civil conspiracy with the creditor's ex-wife and her divorce attorney. The creditor sought, *inter alia*, a determination of the nondischargeability of the debt under § 523(a)(6). The debtors moved to dismiss for failure to state a claim. In granting the motion, the court stated:

> The interesting issues raised by the defendants' motions to dismiss are whether a conspiracy claim can substitute for the intentional tort typically required to make a debt nondischargeable under Section 523(a)(6). The Court holds it is not . . . Simply stated, a co-conspirator's acts cannot suffice to establish the elements of Bankruptcy Code Section 523(a)(6), unless the acts were taken directly by the debtor against the objecting creditor. Participation in a conspiracy is not enough to establish the intentional wrong needed to make a debt nondischargeable.

> Bankruptcy is a uniquely personal act. The debtor's right to receive a discharge is a personal right, which should not be denied lightly. "Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor." *In re Maxwell*, 334 B.R. 736, 741 (Bankr. M.D. Fla. 2005) (citing *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986)). . . . "Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system." *Maxwell*, 334 B.R. at 741 . . . Therefore, in order to establish that a particular debt is nondischargeable, at a minimum, the creditor must establish that the debtor, not someone else in a chain of co-conspirators, took the offensive act and that the act was directed at the creditor, not someone else. *See In re Eggers*, 51 B.R. 452, 453 (Bankr. Tenn. 1985) ("The legislative history accompanying § 523(a)(6) indicates that a debt is nondischargeable only where injury has resulted from some deliberate or intentional act of the debtor . . .")

*Nofziger*, 361 B.R. at 243-44.

In many other cases as well, courts have stressed the importance of an anchoring focus on the "injury by the debtor" language in § 523(a)(6). *See, e.g., In re Anthony*, 2020 WL 94572 (D. M.D.

19

APPELLANT'S OPENING BRIEF

Fl. Jan. 8, 2020) at * 9 ("Courts have relied on the ['by the debtor'] language to find that vicarious liability does not satisfy the 'willful' requirement of Section 523(a)(6)"); *In re Nolan*, 220 B.R. 727, 732 (D.D.C. 1998) ("The addition of the phrase 'by the debtor' indicates a rejection of an imputed or vicarious liability theory"); *In re Hazen*, 2018 WL 4718976 (Bankr. E.D. N.Y. Sep. 28, 2018) at * 8 ("The plain language [of § 523(a)(6)] provides that the injury must be 'by the debtor' and, as such, leaves no room for the imputations of another's acts"); *In re Bruce*, 593 B.R. 765, 777 (Bankr. S.D. Ohio 2018) ("Under [Section 523(a)(6)], the willful and malicious injury has to be an injury '*by the debtor* to another entity or to the property of another entity'. . . . Consequently, the willful and malicious conduct of others, even if the debtor may be legally responsible for that conduct under state law, cannot be imputed to the debtor for purposes of Section 523(a)(6).").

Given, then, the critical importance of the "injury by the debtor" language, the first question that arises is: What are the injuries of which the Appellees complained in the *Sines v. Kessler* case and for which they were awarded $1,303,284 in nominal and compensatory damages and $468,216 in costs, i.e., what injuries do Appellees now assert were "by" Mr. Damigo to the Appellees? The answer is set forth on page 19 of Appellees' initial memorandum in support of their motion for summary judgment in the Adversary Proceeding: primarily the injuries caused by James Fields' actions in driving his car into a crowd that included a number of the Appellees; and secondarily, the "psychological and emotional harm from the events of August 11, 2017, where they were surrounded by the mob of Alt-Right protestors led by Kessler, Spencer, Kline, and others at the torch march, spat upon, cursed at, and called racially discriminatory names." Apx. 299-300.

So the element-by-element application of the § 523(a)(6) exception to Mr. Damigo is as follows: Have Appellees established in accordance with § 523(a)(6)'s strict requirements that Mr. Damigo willfully (i.e., with a subjective motive to inflict injury or believing that injury is substantially certain

20

APPELLANT'S OPENING BRIEF

to result from his conduct, *see Carillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002)), and maliciously (i.e., by committing a wrongful act intentionally that necessarily causes injury and is without just cause or excuse, *see Petralta v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)), injured certain Appellees by means of James Fields' bad conduct in driving into a crowd that included the Appellees or causing emotional harm to certain other Appellees by the torch march on August 11, 2017? No affirmative answer is supported by the *Sines v. Kessler* jury instructions or the jury verdict, which do not link Mr. Damigo to James Fields except by imputed, vicarious liability, nor link Mr. Damigo to any injuries to Appellees from the torch march.

Nor do the Statements of Undisputed Facts ("SUFs") that Appellees submitted in their summary judgment briefing in the Adversary Proceeding (e.g., Apx. 298-300) satisfy their burden – far from it. First of all, these so-called SUFs were never approved or validated by the jury in the *Sines v. Kessler* case and accordingly fail to meet the stringent standard for collateral estoppel. In any event, on page 17 of their initial summary judgment memorandum, Appellees, summarizing their SUFs, describe the only connections they can muster between Mr. Fields and Mr. Damigo: "Damigo's co-defendant Fields was photographed with Kline and members of Vanguard America. SUF # 68. Fields had previously tweeted to Damigo: 'Defending the innocent is a good idea, defending private property is a good idea, both require Force,' SUF #69, and retweeted the video of Damigo punching a protestor at the Battle of Berkeley, SUF # 70." Apx. 298. So, in summary, Fields was photographed with certain persons other than Mr. Damigo and tweeted a rather innocuous statement to Mr. Damigo that Appellees do not and cannot assert Mr. Damigo ever responded to or even saw. Such so-called "undisputed facts," so gossamer thin and subject to huge gaps, cannot fairly be deemed sufficient to satisfy the stringent requirements to which § 523(a)(6) is subject.

21

APPELLANT'S OPENING BRIEF

Other aspects of the *Sines v. Kessler* case corroborate that the damages and costs awarded against Mr. Damigo encompassed merely his vicarious liability for the acts of others:

- On the *Sines v. Kessler* Second Amended Complaint's two civil rights conspiracy claims, 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986, in which Appellees named Mr. Damigo as a defendant, the jury deadlocked, thus finding no liability for Mr. Damigo. Apx. 352-353.

- Appellees' Second Amended Complaint did not even name Mr. Damigo as a defendant in its Count V (Virginia Code § 8.01-42.1) (submitted to jury as Count IV) and Count VI (Assault and Battery) (to jury as Count V); accordingly he was never found directly and primarily liable on these claims. Apx. 189-90.

- As to Count III, in accordance with Jury Instruction #14 (Membership in a Conspiracy) the jury had the option of finding Mr. Damigo liable based on "even a slight connection between the defendant and the plan" and "even though he played only a minor part." Apx. 344.

- The Magistrate Judge in the *Sines v. Kessler* case explicitly found that "[N]o Plaintiff plausibly alleged—let alone proved—that Damigo, Heimbach, Parrott, Hill, Tubbs, Schoep, Vanguard America, Identity Evropa, TWP, LOS, or NSM subjected him or her to racially, religiously, or ethnically motivated harassment, intimidation, or violence in violation of § 8.01-42.1(A)." Apx. 394. The District Court did not alter the Magistrate Judge's finding; to the contrary, it approved and adopted it. Apx. 438-440.

The logical inference to be drawn from these facts is that Mr. Damigo was not found primarily and directly liable for Counts IV and V, on which Appellees' damages claims – their 'injuries" for purposes of the § 523(a)(6) analysis – were based, but only secondarily and vicariously liable. In accordance with the many cases cited above and the Bankruptcy Court's own holding, this vicarious liability is an insufficient predicate for the § 523(a)(6) exception.

22

First Amendment factors also weigh against application of the § 523(a)(6) exception in this case. As explained in this brief, liability in an underlying case on a civil conspiracy claim is an inadequate predicate for the § 523(a)(6) exception based on collateral estoppel. This conclusion holds true generally but emphatically so where the relevant facts in the underlying case arose in the context of First Amendment activity, such as the Unite the Right demonstration in the present case. As the Supreme Court set forth in its *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) decision, a case in which the Court expressed great concern to protect First Amendment freedoms in the context of demonstrations in which violence occurs:

> When such [violence] occurs in the context of constitutionally protected activity, however, "precision of regulation" is demanded. . . Specifically, the presence of activity protected by the First Amendment imposes restraints on the grounds that may give rise to damages liability and on the persons who may be held accountable for those damages. *Id.* at 916-17 (quoting *NAACP v. Button*, 371 U.S. 415, 438 ( 1963).

Based on these principles, the Court underscored the Constitutional limit on when one person may be held liable for tortious actions of others at such demonstrations: only if he "authorized, directed, or ratified [that] *specific* tortious activity." *Id.* at 927 (emphasis added). *See also Counterman v. Colorado*, 600 U.S. 66 (2023) (First Amendment requires proof of subjective intention in True Threat cases); *Mckesson v. Doe*, 144 S.Ct 913, 914 (2024) (statement of Justice Sotomayor regarding denial of certiorari) (emphasizing that the *Counterman* standard applies in a case involving whether the leader of a demonstration may be held liable for tortious actions of others).

Given that Mr. Damigo's liability in *Sines v. Kessler* arose only from the Appellees' Civil Conspiracy claim, that the jury instruction for that claim allowed for liability even if Mr. Damigo played only a "minor role" in the conspiracy and had merely a "slight connection" to it, that the jury instructions also allowed for liability based on state law claims that did not involve willful or malicious conduct, that the jury's verdict form awarded the Appellees only $1.00 in compensatory

23

damages on the civil conspiracy claim, and that Mr. Damigo was not a named defendant in any count in which Mr. Fields was found liable, Appellees fail to satisfy the First Amendment requirement of showing that Mr. Damigo "authorized, ratified, or directed" Mr. Fields' tortious action in driving his car into a crowd.

In concluding otherwise, the Bankruptcy Court relied heavily on the *Sines v. Kessler* District Court's directed verdict memorandum, particularly the following excerpt that the Bankruptcy Court quoted (abridged):

> Damigo overlooks other substantial evidence in the record from which the jury could find both his participation in an unlawful conspiracy and foreseeability of the acts that injured Plaintiffs. . . Damigo argues that there was no evidence that any act of violence committed by the co-conspirators would be foreseeable by him. The Court disagrees. Such violence was certainly foreseeable. Indeed, the communications between the Unite the Right organizers were replete with candid statements by Damigo and others in Identity Evropa, as well as the other Unite the Right organizers, demonstrating that they shared expectations of, hoped for, planned for, and purposefully sought to instigate violence at Unite the Right including discussing whether someone could drive a car through a crowd of demonstrators that might be blocking the street.

Bankr. Court Joint Memo. Op., Apx. 320-321, quoting *Sines v. Kessler* Memo. Op., Apx. 201, 203-204 (DE 1622) (emphasis deleted).

The Bankruptcy Court's reliance on the *Sines v. Kessler* District Court's directed verdict opinion, however, is flawed in several respects.

First, immediately after the language quoted above, the *Sines v. Kessler* District Court provided examples of evidence to support its general statements. The only evidence it listed that it attributed to Mr. Damigo was "See, e.g., . . . . PX 882 (Damigo posting on Identity Evropa Discord server that '[t]he lines between politics and violence is blurring. Welcome to 4th generational

24

APPELLANT'S OPENING BRIEF

warfare.'"). Apx. 204. This cannot fairly be characterized as satisfying the Constitutional burdens required by the Supreme Court or Appellees' many other burdens.

Second, the *Sines v. Kessler* District Court's memorandum opinion denying Mr. Damigo's (and other defendants') post trial motions does not support application of collateral estoppel in favor of Appellees' invocation of the § 523(a)(6) exception. The court's memorandum addressed issues markedly different from the § 523(a)(6) issues. Moreover, the burden of proof applied in the court's memorandum differed radically from the burden applicable in the Adversary Proceeding below.

The court's memorandum did not address whether Mr. Domingo had caused "willful and malicious injury to" the Appellees. The issue before the court, rather, was the very different question of whether substantial evidence existed that could support the jury's verdicts. On that question, as the court noted, the law imposed a heavy burden on Mr. Damigo and the other defendants: "When a jury's verdict has been returned, judgment as a matter of law may be granted only if, viewing the evidence in the light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party." Apx. 196. The court's citation of evidence in its memorandum, accordingly, was in the nature of a "the jury might have considered this evidence" proposition, not an assertion that the jury actually did consider it, and there is, in fact, no basis for concluding that the jury actually did consider it. In contrast to this strict verdict-favoring standard, in the present collateral estoppel litigation it is the Appellees, not Mr. Damigo, who must satisfy a stringent standard. *See* Applicable Legal Standards section of this brief.

Third, the focus of the quotation from the *Sines v. Kessler* District court above, which the Bankruptcy Court adopted, was on foreseeability – i.e., whether violence was foreseeable by those found liable under the Civil Conspiracy count. Foreseeability connotes an objective, reasonable

25

APPELLANT'S OPENING BRIEF

person standard and is consistent with a claim based in negligence. In accordance with the Supreme Court's strict standards for the § 5239a)(6) exception in its *Geiger* case, a debtor's negligent acts are an insufficient predicate for the exception. *Geiger*, 523 U.S. at 64 ("[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)").

Finally, the Bankruptcy Court, to support its decision, presented the following hypothetical :

> For example, imagine a situation where a debtor hired a third-party to inflict bodily injury on another individual (say, the debtor's wife's ex-boyfriend). The third-party, as paid and directed by the debtor, physically beats up the individual, which results in a willful and malicious injury that would be nondischargeable under 11 U.S.C. § 523(a)(6) for the third-party. Under Defendant-Debtor's contention, the debtor who developed, organized, hired, and paid the third-party to commit the willful and malicious injury would be insulated from nondischargeablilty of that debt.

Apx. 325.

The analogy is inapposite. The hypothetical describes solicitation of a crime, which is itself a crime. Mr. Damigo did not solicit Mr. Fields or anyone else to commit a crime and the *Sines v. Kessler* jury never found or even suggested that he did. If the jury had believed otherwise, it would not have awarded Appellees only $1.00 in compensatory damages against Mr. Damigo on the Civil Conspiracy claim nor found him not liable on the two Civil Rights conspiracy claims. Moreover, the Bankruptcy Court's hypothetical is inconsistent with the Magistrate Judge's holding that Appellees presented no evidence Mr. Damigo violated the Virginia statute. Mr. Damigo's right to an impartial adjudication should not be impaired by an inflammatory hypothetical that bears no resemblance to the facts in this case.

II.    **In Light of the *Sines v. Kessler* Jury Instruction Permitting an Award of Punitive Damages Based on a Recklessness Standard, the Punitive Damages Award against Mr. Damigo Is Dischargeable.**

Appellees' effort to invoke the § 523(a)(6) exception with regard to the *Sines v. Kessler* jury's

26

APPELLANT'S OPENING BRIEF

punitive damages award suffers from a fatal flaw that stems from the Supreme Court's decision in *Kawaauhau v. Geiger*. In *Geiger*, the Court held that a finding of recklessness was insufficient to satisfy the § 523(a)(6) exception:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury" . . . . A construction so broad would be incompatible with the "well-known" guide that exceptions to discharge "should be confined to those plainly expressed." *Gleason v. Thaw*, 236 U.S. 558, 562 (1915) . . . We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6).

523 U.S. at 61, 62, 64.

In accordance with *Geiger*, if a punitive damages award was or could have been awarded based on a recklessness standard, the § 523(a)(6) exception does not apply. In *In re Duncan*, 448 F.3d 725 (4th Cir. 2006), the Fourth Circuit addressed this precise issue in a case involving, as this case does, punitive damages and collateral estoppel under Virginia law. The court in *Duncan* held:

> The state court judgment for punitive damages likewise does not support application of collateral estoppel because the record does not establish that it was based on a finding identical to the controlling issue under § 523(a)(6) . . . The state court jury entered a punitive damages award against Jacqueline Duncan based on the following instruction:
>
> > If you find your verdict for the Plaintiff and if you believe by the greater weight of the evidence that the Defendant's conduct was a willful one, or was so reckless as to evince a conscious disregard for the safety of [Meigan] you may also award punitive damages to the Plaintiff.
>
> J.A. 285G. Under this instruction, the jury could have found that Jacqueline Duncan was liable for either willful conduct or reckless conduct. The record contains no indication of which of these two standards the jury employed.

The Fourth Circuit continued:

> It is this gap in the record that renders summary judgment based on collateral estoppel

27

inappropriate. One of the two standards in the punitive damages instruction—recklessness—is satisfied by conduct that is inadequate for purposes of § 523(a)(6). *Geiger*, 523 U.S. at 64 ... ("debts arising from recklessly ... inflicted injuries do not fall within the compass of § 523(a)(6)"). Even if we were to assume that the willful conduct portion of the punitive damages instruction is synonymous with a "willful and malicious injury" under § 523(a)(6), nothing before us suggests that the jury made its determination on that basis. We cannot say that the punitive damages award necessarily involved a finding identical to the § 523(a)(6) inquiry since the jury could have based its award on a finding of recklessness. Both because such a possibility exists and because Virginia law requires an identity of issues for collateral estoppel to apply, we cannot conclude that the question of whether Meigan's death was a "willful and malicious injury" was litigated in and necessary to the award of punitive damages. Accordingly, application of collateral estoppel based on the punitive damages award is inappropriate here.

*In re Duncan*, 448 F.3d at 730. *See also In re Rumjahn*, 2006 WL 6602239 at *2 (Bankr. S.D. Ca. Oct. 13, 2006) (unpublished) ("The jury instruction in the state court proceedings allowed for a finding of malice or oppression based on 'despicable conduct,' and that term incorporates an objective person standard. As a result, this Court cannot determine if the state court jury based its finding of malice and oppression on elements that would satisfy Section 523(a)(6)."). As in *Duncan*, so too in *Sines v. Kessler* the punitive damages jury instruction (Number 36) permitted the jury to award punitive damages based on recklessness: "You may award Plaintiffs punitive damages if you find that the acts or omissions of a Defendant were done maliciously or wantonly. An act or failure to act is maliciously done if it is prompted by ill will or spite towards the injured person. An act or failure to act is wanton if done with a reckless or callous disregard for the rights of the injured person." Apx. 349. Accordingly, under *Geiger*, *Duncan*, and Virginia principles of collateral estoppel, the § 523(a)(6) exception is not available as to the punitive damages award.

The reasoning of the Bankruptcy Court in reaching the opposite conclusion was patently flawed. First, the court failed to discuss or even mention the highly apposite *Duncan* case, which Appellant presented to the court. Second, the linchpin of the court's decision was its assertion that "reckless is

28

APPELLANT'S OPENING BRIEF

not used [in the jury instruction] as a synonym for negligence in this context, but rather used to color the definition of wanton." Apx. at 327-28. It is not self-evident what "color the definition of wanton" means in this statement. In any event, the disjunctive language in the *Sines v. Kessler* jury instruction permitting the jury to award punitive damages based on "reckless or callous disregard" is perfectly clear. Finally, the court's lengthy discussion of the asserted import of "wanton" under Virginia law is irrelevant. In accordance with basic collateral estoppel principles, the decisive issue is not what an academic disquisition of Virginia law might conclude, but what the jury was permitted to conclude under the jury instruction. The Bankruptcy Court was essentially asserting that the punitive damages instruction given to the jury in *Sines v. Kessler* did not properly state Virginia law. This assertion is incorrect, constitutes an impermissible collateral attack on the *Sines v. Kessler* judgment, and violates fundamental collateral estoppel principles in that it relies on non-identical issues that were not actually and necessarily decided in the *Sines v. Kessler* case.

### III. In Light of the Bankruptcy Code's Broad Definition of "Claim," Appellees' Claim for Reimbursable Expenses Was Prepetition and Therefore Dischargeable.

Count II of Appellees' Amended Complaint in the Adversary Proceeding marked off for separate treatment the Reimbursable Expenses component of the *Sines v. Kessler* Amended Judgment. As to this Count II, Appellees did not assert that the § 523(a)(6) exception applies but rather that the alleged Reimbursable Expenses debt arose post-petition and consequently was not covered by Mr. Damigo's January 2, 2019 bankruptcy petition. Apx. 71, 79-80.

Mr. Damigo in his summary judgment briefing challenged Appellees' assertion that the alleged Reimbursable Expenses claim arose post-petition. As Mr. Damigo explained, the definition of "claim" set forth in 11 U.S.C. § 101(5)(A) of the Bankruptcy Code is broadly comprehensive and

APPELLANT'S OPENING BRIEF

includes unliquidated and contingent claims, and the Reimbursable Expenses claim was just such a unliquidated or contingent claim. That Code definition of "claim" provides: "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

The Ninth Circuit in *In re Castellino Villa A.K.F. LLC*, 836 F.3d 1028 (9th Cir. 2016) explicated this definition based on facts quite similar to those that arise with respect to Appellees' Reimbursable Expenses claim. Focusing on the "contingent" and "unliquidated" components, the Ninth Circuit stated:

> A claim is "contingent" when "the debtor will be called upon to pay [it] only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor." *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987) (internal quotation marks omitted). A claim is "unliquidated" when it is not "subject to ready determination and precision in computation of the amount due." *Id.* (internal quotation marks omitted). "This broadest possible definition of 'claim' is designed to ensure that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *In re Jensen*, 995 F.2d 925, 929 (9th Cir. 1993) (internal quotation marks omitted). "The breadth of the definition of 'claim' is critical in effectuating the bankruptcy code's policy of giving the debtor a 'fresh start.'"

836 F.3d at 1033.

The Ninth Circuit then applied these definitions and standards to the facts in that case. The basic facts were these: the debtor had (1) agreed pre-petition to pay the creditor's attorney's fees but (2) the fees were actually incurred post-petition. On these facts, the creditor contended the fees were not dischargeable. The Ninth Circuit, however, rejected the creditor's argument and held the attorney's fee claim had been discharged. The Court stated:

> In determining whether a creditor's claim arose prepetition, we use the "fair contemplation" test. Under this test, "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *Id.* at 839; *see also In re Jensen*, 995 F.2d [925] (9ᵗʰ Cir. 1993] at 930–

30

APPELLANT'S OPENING BRIEF

31 ... Accordingly, if a creditor and debtor are engaged in prepetition litigation pursuant to a contract that includes an attorneys' fees provision, and the creditor "can fairly or reasonably contemplate" that it will have a claim for attorneys' fees if an "extrinsic event" occurs (that is, if it prevails in the litigation), then the creditor's claim for attorneys' fees will be discharged in the debtor's bankruptcy even if the creditor incurs attorneys' fees after the debtor was discharged. *See In re SNTL Corp.*, 571 F.3d at 839; *In re Fostvedt* [823 F.2d 305 (9th Cir. 1987)] at 306.

*Id.* at 1034.

Undisputed facts and chronology in *Sines v. Kessler* show that Appellees' Reimbursable Expenses claim, like the attorney's fees claim at issue in *Castellino Villa*, was a contingent and unliquidated claim that was filed pre-petition and therefore was discharged by Mr. Damigo's January 2, 2019 bankruptcy petition. The Magistrate Judge summarized these basic facts and chronology in his March 7, 2024 Order, Apx. 434 DE 1656). In this March 7, 2024 Order, the Magistrate Judge affirmed several times that the Appellees' claim for Reimbursable Expenses arose "under the terms of the ESI Stipulation & Order" that he had "signed and entered on November 19, 2018," approximately six weeks before Mr. Damigo filed his bankruptcy petition on January 2, 2019. Apx. 434, 435. Moreover, the November 2018 Stipulation and Order stated that the liability of Mr. Damigo and the other defendants did not "arise at this time." Apx. 435. As the Bankruptcy Court observed, this reference to "at this time" logically entails that it was expected to arise later. Apx 333. The November 2018 Stipulation and Order thus created the contingent and unliquidated liability that the invoice, later submitted by the third-party vendor in March 2019, rendered noncontingent and liquidated, circumstances directly analogous to the attorney's fees agreement in *Castellino*. Appellees' claim for Reimbursable Expenses, accordingly, arose pre-petition and was discharged by Mr. Damigo's January 2019 bankruptcy filing.

The Bankruptcy Court agreed with Mr. Damigo that the Reimbursable Expenses claim arose

31

APPELLANT'S OPENING BRIEF

pre-petition, and relied on the *Castellino* case to support its conclusion. Apx. 331-333. The court, accordingly, granted Mr. Damigo's motion for summary judgment as to Count II. Apx. 335. The court nonetheless *sua sponte* fashioned an argument to save Appellees' Reimbursable Expenses claim: i.e., that the Reimbursable Expenses were "costs" under FRCP 54(d) or 28 U.S.C. § 1920 or "attorney fees" under FRCP 58(3) and therefore should be included in the costs component of the *Sines v. Kessler* Amended Judgment. Apx. 333-334. This was an argument Appellees not only never made for themselves and did not plead in their Count II, but one that was diametrically in conflict with the arguments they did make, i.e., that the Reimbursable Expenses claim arose post-petition. The Bankruptcy Court's creation of this argument on behalf of the Appellees was inconsistent with the neutral role of judges. *See, e.g., United States v. Sineneng-Smith,* 590 U.S. 371, 375-76 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation. As this Court stated in *Greenlaw v. United States,* 554 U.S. 237 . . . (2008), 'in both civil and criminal cases, in the first instance and on appeal ..., we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'")

In any event, the Bankruptcy Court's argument is fallacious for multiple reasons.

First, to support Appellees' invocation of the § 523(a)(6) exception on collateral estoppel grounds, Appellees must carry their burden of demonstrating that (1) the *Sines v. Kessler* litigation *actually* and *necessarily* addressed the precise issue of whether the Reimbursable Expenses could be characterized as "costs"; and (2) resolved that issue favorably to Appellees. *In re Valladoid,* 2022 WL 3447512 at * 4. Appellees cannot come close to carrying this burden. To the contrary, the Magistrate Judge in *Sines v. Kessler* treated the Reimbursable Expenses issue as entirely separate from the issues of costs under FRCP 54(d)(1) and § 1920 and attorneys' fees under FRCP 54(d)(2). *See* Apx. 338 and 434 (DE 1655 and DE 1656). At no point did the Magistrate Judge hold that the

32

APPELLANT'S OPENING BRIEF

Reimbursable Expenses could properly be analyzed or characterized as "costs." The Bankruptcy Court's "costs" theory, accordingly, fails on collateral estoppel grounds alone.

Second, the Magistrate Judge repeatedly characterized the Appellees' Reimbursable Expenses claim as based on the parties' "agreement." *See* Apx. 444 (DE 379) (November 13, 2018 Order) ("agreed-upon terms"); *id.* at 2, Apx. 445 ("Plaintiffs agree to pay all fees or costs incurred by the third-party vendor in imaging the electronic devices. This agreement is without prejudice to Plaintiffs' ability to seek to recover those expenses at a later date."); Apx. 435 (DE 1656) (March 7, 2023 Order) ("agreed-upon terms"); *id.* at p. 2 n.1, Apx. 435 (quoting ESI Sipulation and Order: "the parties hav[e] stipulated and agreed to the terms set forth herein"); *id.* at p. 3, Apx. 436 ("The Parties' agreement contemplated. . . "). It is well settled, however, that a mere breach of contract is not the type of injury addressed by § 523(a)(6). *See, e.g., In re Riso*, 978 F.2d 1151, 1154 (9ᵗʰ Cir. 1992). An intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct. *Id.; see also In re Akridge*, 71 B.R. 151, 154 (Bankr. S.D. Cal. 1987) (debts that are excepted from discharge under § 523(a)(6) relate solely to tortious liabilities, not debts stemming from breach of contract). Appellees have not even alleged that Mr. Damigo's breach of the Reimbursable Expenses agreement was tortious. No § 523(a)(6) exception, accordingly, can be based on the breach of the Reimbursable Expense agreement.

Third, the Appellees' Reimbursable Expenses claim does not fit into any of the six categories of "costs" identified in 28 U.S.C. § 1920. Section 1920 states:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

APPELLANT'S OPENING BRIEF

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

Any attempt to shochorn the Reimbursable Expenses agreement into these categories would contravene the Supreme Court's and Ninth Circuit's admonitions that those categories must be narrowly construed. *See, e.g., Kalitta Air LLC v. Central Texas Airborne System, Inc.,* 741 F.3d 955 (9th Cir. 2013) ("[W]e construe § 1920 narrowly"). Moreover, the Supreme Court in *Crawford Fitting Co. v. Gibbons, Inc.,* 482 U.S. 437, 442 (1987), held that "[t]he discretion granted by [FRCP] 54(d) is . . . . solely a power to decline to tax, as costs, the items enumerated in § 1920." FRCP 54(d), accordingly, like § 1920, cannot be used as a basis for including the Reimbursable Expenses agreement as "costs," contrary to what the Bankruptcy Court seemed to suggest.

## CONCLUSION

For the reasons stated, Appellant Nathan Damigo respectfully requests that the Bankruptcy Court's August 29, 2025 judgment be reversed and this case be remanded with instructions that Appellant's motion for summary judgment be granted as to both counts of Appellees' Amended Complaint.

Respectfully submitted,

_____ /s/ _____

Glen K. Allen, Esq.
5423 Springlake Way
Baltimore, MD 21212
410-802-6453
Attorney for Appellant Nathan Damigo

_____ /s _____

Andrew Everett Allen
340 Golden Gate Avenue
Belvedere, CA 94920-2445

34

APPELLANT'S OPENING BRIEF

415-987-7471
Attorney for Appellant Nathan Damigo

## CERTIFICATE OF COMPLIANCE

On this date, April 24, 2026, I hereby certify that this brief complies with the requirements set forth in the Federal Rules of Bankruptcy Procedure, including Rules 8014, 8015, and 8018. The brief contains 11,976 words.

_____/s/ _____

Glen K. Allen, Esq.
5423 Springlake Way
Baltimore, MD 21212
Attorney for Appellant Nathan Damigo

_____/s_____

Andrew Everett Allen
340 Golden Gate Avenue
Belvedere, CA 94920-2445
415-987-7471
Attorney for Appellant Nathan Damigo

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2026, true and accurate copies of the foregoing were served via ECF procedures of this Court to all counsel of record.

_____/s/ _____

Glen K. Allen, Esq.
5423 Springlake Way

35

APPELLANT'S OPENING BRIEF

Baltimore, MD 21212
Attorney for Appellant Nathan Damigo

_____ /s _____

Andrew Everett Allen
340 Golden Gate Avenue
Belvedere, CA 94920-2445
415-987-7471
Attorney for Appellant Nathan Damigo

36

APPELLANT'S OPENING BRIEF

## STATUTES AND RULES

### 11 U.S.C. § 523 – Exceptions to Discharge

(a) A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . .

### 28 U.S.C.A. § 1920

### § 1920. Taxation of costs

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are ne obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

37